**[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 42.]**

OFFICE OF DISCIPLINARY COUNSEL *v*. CARRETTA.

**[Cite as *Disciplinary Counsel v. Carretta*, 1995-Ohio-246.]**

*Attorneys at law—Misconduct—Six-month suspension—Allowing person who recommended attorney for employment to direct or regulate his professional judgment in rendering such legal services.*

(No. 94-1838—Submitted January 24, 1995—Decided April 19, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-29.

_____

{¶ 1} Relator, Office of Disciplinary Counsel, charged respondent, Ernest Craig Carretta of Fairborn, Ohio, Attorney Registration No. 0001945, with violations of, inter alia, DR 1-102(A)(4) ( engaging in conduct involving dishonesty, fraud, deceit, or misrepresention) and 5-107(B) (allowing person who recommended him for employment to direct or regulate his professional judgment in rendering such legal services). Respondent answered, denying any misconduct. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard the matter upon stipulations, testimony, and other evidence on July 11, 1994.

{¶ 2} All the charges against respondent arose from his representation of Leona Darke, an eighty-one -year-old childless widow living in a nursing home. Walter Vastbinder, Ph.D., engaged respondent to draft a will for Darke in February 1991. Respondent drafted the will and eventually served as attorney for Darke's estate after her death on April 25, 1991. However, he never spoke to Darke and relied entirely on Vastbinder's representations of her wishes.

{¶ 3} Respondent relied on Vastbinder, an old friend of Darke's, because he was the pastor of a church that respondent previously attended and a well-known

figure in his community. Vastbinder also held power-of-attorney for Darke, although he shared this responsibility with Jean Yocum, Darke's second cousin, and her son, Thomas Yocum.

{¶ 4} Vastbinder asked respondent to incorporate into Darke's will the terms of a signed Declaration of Trust, two pages of proposed changes to the trust that Darke had signed, and certain other changes that Vastbinder reported orally, purportedly at Darke's request. Vastbinder requested this because he feared that the Declaration of Trust, which he had prepared, might be invalid.

{¶ 5} The will respondent prepared differed from the documents Darke signed in several respects. For example, the residuary clause of the trust instructed Vastbinder, as the successor trustee, to distribute any funds remaining after payment of specific bequests "* * * at his discretion to whatever charities or causes known by him to be held in my respect, with consideration of * * * the establishment of a student scholarship in memory of my deceased husband * * * at Asbury Seminary * * * ." The residuary clause in the will gave Vastbinder, as trustee, the right to dispose of Darke's remaining property as he deemed best, with any remaining cash to be given to Somerset United Methodist Church. The will also provided for estate taxes to be borne by the "gross estate," whereas the trust provided for payment of these taxes by beneficiaries of specific bequests. Vastbinder and his children were beneficiaries of specific bequests in the trust and the will. Further, the will did not include a $50,000 specific bequest made by the trust to Vastbinder because he advised respondent that Darke wanted to give Vastbinder that amount as a gift before she died.

{¶ 6} Vastbinder arranged for Darke to sign this will in the presence of witnesses at the nursing home on February 27, 1991. He then returned the will to respondent, who retained it until Darke's death two months later. Apparently, also on February 27, Vastbinder arranged for Darke to sign a letter instructing bank officials to "roll-over" to him, or to remove her interest in, their joint bank account

containing over $107,000. He also obtained her signature on an acknowledgment, prepared by respondent at Vastbinder's request, that she gave Vastbinder a gift in the amount of $50,000.

{¶ 7} After Darke's death, respondent admitted her will to probate as attorney for the estate, a capacity that, according to Vastbinder, he and respondent discussed during preparation of the will. Thereafter, Jean Yocum filed two separate actions against Vastbinder, the named executor in the will, and others. Her claims were designed, in part, to contest the distribution of estate assets under the residuary clause of the will. Both actions were settled on December 20, 1991, in exchange for a promise that the residual assets would be given to a church and not be retained by Vastbinder. On Vastbinder's request, the settlement agreement also recognized his valid receipt of approximately $107,000 from Darke two months before her death. The settlement further acknowledged that Vastbinder would continue as executor.

{¶ 8} Respondent filed an Ohio Estate Tax Return for the Darke estate on September 2, 1992. He failed to report on that return Vastbinder's receipt of the $107,000 transfer from Darke, which, according to the form, was presumed to have been made in contemplation of death and, thus, taxable as part of the gross estate. Respondent claims to have forgotten this transfer during the eight months that passed after settlement of the Yocum actions. He also emphasizes that he filed an amended return when he realized his "mistake."

{¶ 9} Respondent requested $10,000 in attorney fees for his services to the Darke estate and was granted $8,000. Vastbinder received $5,000 in executor fees in addition to his share of the estate. Respondent did not dispute that both fees might have been avoided by an artfully drafted trust document.

{¶ 10} From this evidence, the panel unanimously determined that respondent had violated DR 5-107(B). By separate opinion, one panel member concluded that respondent had also violated DR 1-102(A)(4) by failing to report

the $107,000 transfer made to Vastbinder two months before Darke's death. A majority of the panel recommended that respondent be suspended from the practice of law for one year for the violation of DR 5-107(B), but that imposition of this sanction be stayed on the condition that he commit no further misconduct. The concurring and dissenting panel member recommended a full one-year suspension. The board adopted the findings and recommendation of the panel majority.

————————————

*Geoffrey Stern*, Disciplinary Counsel, and *Alvin E. Mathews*, Assistant Disciplinary Counsel, for relator.

*Carretta, Cornish & Brezine Co., L.P.A.*, and *Donald F. Brezine*, for respondent.

————————————

**Per Curiam.**

{¶ 11} We agree that respondent violated DR 5-107(B), but we find the recommended sanction is not an adequate sanction for the nature of respondent's conduct. We consider relator's recommendation—a six-month suspension—the more appropriate response to this misconduct. Respondent is, therefore, suspended from the practice of law in Ohio for a period of six months. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT and RESNICK, JJ., dissent.

————————————

**WRIGHT, J., dissenting.**

{¶ 12} Because I would suspend respondent from the practice of law in Ohio for a period of one year, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

————————————